1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9  DAVID MICHAEL ALVARADO,     1:07cv0994 DLB HC

10               Petitioner,     ORDER DENYING PETITION
                              FOR WRIT OF HABEAS CORPUS

11    v.                        (Document 1)

12

13  JAMES A. YATES,

14               Respondent.
      _____/

15

16      Petitioner David Michael Alvarado ("Petitioner") is a state prisoner proceeding pro se

17  with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C.

18  § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge.

## RELEVANT HISTORY

19

20      On August 20, 2004, in the Tulare County Superior Court, a jury convicted Petitioner of

21  carjacking with a firearm use enhancement.  He was sentenced to 16 years and 8 months in

22  prison.[1]

23      On February 17, 2005, Petitioner appealed his conviction to the California Court of

24  Appeal, Fifth Appellate District.  The court affirmed the judgment, but directed the trial court to

25  amend the sentencing order and abstract of judgment to delete any references to the imposition of

26  a restitution fine or a parole revocation fine.

27

28      [1] Prior to trial, Petitioner pleaded no contest to auto theft, receiving stolen property, false personation of another, reckless driving, resisting a peace officer, and driving with a suspended license.

1    On August 9, 2006, Petitioner filed a petition for writ of habeas corpus in the Tulare

2    County Superior Court.  The court denied the petition on August 10, 2006.

3    Petitioner filed a petition for writ of habeas corpus in the Fifth District Court of Appeal

4    on September 13, 2006.  The petition was denied on March 23, 2007.

5    On April 18, 2007, Petitioner filed a petition for writ of habeas corpus in the California

6    Supreme Court.  The court denied the petition on October 10, 2007.

7    Petitioner filed the instant federal petition for writ of habeas corpus on July 12, 2007.  He

8    alleges (1) ineffective assistance of counsel; (2) ineffective assistance of appellate counsel; (3)

9    violations of his Fifth Amendment right against self-incrimination; and (4) identification through

10   an impermissible lineup.

11   Respondent filed an answer on April 3, 2008.

12   Petitioner did not file a traverse.

13   **STATEMENT OF FACTS**[2]

14   On January 10, 2004, Randall Clemons arrived home and parked his car in his driveway.

15   According to Clemons, Petitioner approached his car, placed a gun to his head, and ordered

16   Clemons to give him the keys to his car.  Petitioner subsequently grabbed Clemons' car keys and

17   ordered Clemons to go inside his house.  Petitioner then drove off with Clemons' car.

18   Two days later, a California Highway Patrol officer spotted Petitioner driving Clemons'

19   car and activated his police emergency lights.  Petitioner attempted to evade the officer by

20   recklessly driving at a rate of 100 miles per hour.  A pursuit ensued, and Petitioner eventually

21   stopped the car in an orchard.  Petitioner got out of the car and attempted to flee the scene.  The

22   officer caught up with Petitioner, who allegedly told the officer, "'[d]on't arrest me, don't arrest

23   me, I can give you other people, other things, drug dealers and stolen car.'"  Petitioner admitted

24   to the officer that he knew the car was stolen and claimed to have bought it from another person

25   for $500.  Petitioner also stated that "'[c]arjacking is a big thing, isn't it?  But they need to have a

26   gun to prove it.  The most they've got is joyriding.'"

27

28        [2] This statement of facts is taken from the Fifth District Court of Appeal's August 25, 2005, opinion, as well
     as Respondent's brief and the lodged record.

1    Petitioner initially identified himself as his brother, Jesse Alvarado, Jr., and provided a
2    false date of birth.  Based on this information, a photo lineup was generated but Clemons was
3    unable to positively identify the gunman.  A second photographic lineup included a picture of
4    Petitioner, but Clemons was again unable to make an identification.

5    On the day of the preliminary hearing, Clemons and Officer Alvarez entered the
6    courtroom to wait for the hearing to begin.  Clemons immediately identified Petitioner, who was
7    seated in the jury box with two other inmates, as the carjacker.  RT 211.  He was 100 percent
8    sure of his identification and he informed Officer Alvarez.  RT 214.

9    During trial, Clemons described the person as a short Hispanic male, approximately 25 to
10   35 years old.  RT 121.  He identified Petitioner as the assailant.  RT 126.

11   **DISCUSSION**

12   A.    Jurisdiction

13   Relief by way of a petition for writ of habeas corpus extends to a person in custody
14   pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws
15   or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,
16   529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered
17   violations of his rights as guaranteed by the U.S. Constitution.  Petitioner challenges his
18   conviction imposed by the Tulare County Superior Court, which is located within the jurisdiction
19   of this Court.  28 U.S.C. § 2254(a); 2241(d).

20   On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act
21   of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its
22   enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), cert. denied, 522 U.S.
23   1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting
24   Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), cert. denied, 520 U.S. 1107, 117 S.Ct.
25   1114 (1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059
26   (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant
27   petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

28

3

B.    Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Lockyer, at 1175 (citations omitted).  "Rather, that application must be objectively unreasonable."  Id. (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction.  Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

4

C.   Ineffective Assistance of Trial Counsel

Petitioner presents numerous claims of ineffective assistance of counsel.  Specifically, he alleges that counsel was ineffective for (1) failing to advise Petitioner that he would be subject to a ten year enhancement if he rejected the plea deal and the firearm enhancement was proven at trial; (2) refusing to let Petitioner testify in support of a third-party culpability defense; (3) interviewing Petitioner only twice before trial; (4) failing to interview and investigate potential and actual witnesses before trial; and (5) failing to investigate and obtain materials relating to police procedures for obtaining Miranda waivers.

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors.  Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687.  The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different," 466 U.S., at 694. Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable.  Strickland, 466 U.S. at 688.  The court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness.  Id.;

1    Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir.

2    1994).

3         A court need not determine whether counsel's performance was deficient before

4    examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

5    Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984).  Since the defendant must

6    affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily

7    fail. However, there are certain instances which are legally presumed to result in prejudice, e.g.,

8    where there has been an actual or constructive denial of the assistance of counsel or where the

9    State has interfered with counsel's assistance.  See Strickland, 466 U.S. at 692; United States v.

10   Cronic, 466 U.S., at 659, and n. 25, 104 S.Ct., at 2046-2047, and n. 25 (1984).

11        Ineffective assistance of counsel claims are analyzed under the "unreasonable

12   application" prong of Williams v. Taylor, 529 U.S. 362 (2000).  Weighall v. Middle, 215 F.3d

13   1058, 1062 (2000).  "Under the 'unreasonable application' clause, a federal habeas court may

14   grant the writ if the state court identifies the correct governing legal principle from [United States

15   Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's

16   case."  Williams, 529 U.S. at 413.  The habeas corpus applicant bears the burden to show that

17   the state court applied United States Supreme Court precedent in an objectively unreasonable

18   manner.  Price v. Vincent, 538 U.S. 634, 640 (2003).  With this standard in mind, the Court now

19   turns to each of Petitioner's claims of ineffective assistance of counsel.

20        *Plea Advisements*

21        Petitioner first argues that his counsel, Antonio R. Reyes, failed to inform him that if he

22   rejected an 8-year plea offer and was found guilty of carjacking, he faced a mandatory 10-year

23   enhancement if the jury also found that he used a firearm during the crime.  He states that had he

24   known this, he would have taken the offer of 8 years.

25        The Supreme Court has held that the Strickland analysis applies to claims of ineffective

26   assistance of counsel involving counsel's advice during the plea process.  Hill v. Lockhart, 474

27   U.S. 52, 58-59 (1985).  Where a defendant claims that counsel was ineffective for suggesting that

28   he plead guilty, he must show that there is a reasonable probability that, but for counsel's errors,

6

1 he would not have pleaded guilty and would have insisted on going to trial.

2      Although the Supreme Court has not addressed the opposite situation, where a defendant

3 contends that counsel's ineffective assistance caused him to reject a plea offer, the Ninth Circuit

4 has held that this states a viable Sixth Amendment claim.  Turner v. Calderon, 281 F.3d 851,

5 879-80 (9th Cir. 2002); Nunez v. Mueller, 350 F.3d 1045 (9th Cir. 2003).  To prevail on the

6 claim, a defendant must first demonstrate a gross error on the part of counsel.  Id. at 880.

7 Erroneous advice regarding the consequences of a guilty plea is insufficient to establish

8 ineffective assistance; Petitioner must establish a "'gross mischaracterization of the likely

9 outcome' of a plea bargain 'combined with ... erroneous advice on the probable effects of going

10 to trial.'"  Sophanthavong v. Palmateer, 378 F.3d 859, 868 (9th Cir.2004).  As to prejudice, he

11 must show that but for counsel's errors, there was a reasonable probability at the time of the offer

12 that he would have agreed to the offer rather than insisting on going to trial.  Id.  While

13 "uncertainty is inherent in predicting court decisions," McMann v. Richardson, 397 U.S. 759,

14 771 (1970), counsel is required to give the defendant the tools he needs to make an intelligent

15 decision.  Turner, 281 F.3d at 881.  A "self-serving statement, made years later," is insufficient to

16 establish that a defendant was unaware of the risks of going to trial.  Id.  "If the rule were

17 otherwise, every rejection of a plea offer, viewed perhaps with more clarity in the light of an

18 unfavorable verdict, could be relitigated upon the defendant's later claim that had his counsel

19 better advised him, he would have accepted the plea offer."  Id.

20      Petitioner presented this issue to the Tulare County Superior Court.  In denying the claim,

21 the court explained:

22      The information clearly sets forth the consequences of a conviction for use of a firearm.
       Even during his interview by law enforcement the Petitioner acknowledged an awareness
23      of greater consequences should he be convicted of carjacking.  No objection was made at
       the time of sentencing as to the 10 year enhancement that was being imposed.  There is
24      nothing in the record that the Petitioner would have accepted the 8 year indicated
       sentence had he been made aware of the 10 year enhancement.  Everything points to the
25      fact that petitioner was denying the carjacking and that is the reason he went to trial.

26 Lodged Doc. No. 6, p. 2.

27      This determination was not contrary to, or an unreasonable application of, clearly

28 established Supreme Court precedent.  Indeed, the only evidence Petitioner presents to this Court

1   is a statement in his declaration that he would have accepted the plea offer had he known that he

2   would have been subject to the 10 year enhancement.  Such a self-serving statement is

3   insufficient.  Turner, 281 F.3d at 881.

4         Moreover, as Respondent explains, Mr. Reyes entered the case long after the 8 year offer.

5   According to the record, the prosecution offered Petitioner a plea bargain with an "eight-year

6   lid," on January 30, 2004, the day before the preliminary hearing.  CT 17.  At that time,

7   Petitioner was represented by the Tulare County Public Defender's Office, and he does not make

8   any ineffective assistance of counsel claims against the public defender.[3]  There are no

9   indications in the record that the offer was renewed or that any other offer was made.  Therefore,

10  even assuming that Mr. Reyes did not convey the possibility of the 10 year enhancement,

11  Petitioner cannot claim prejudice because the 8 year offer, which he now states he would have

12  taken but for Mr. Reyes' alleged error, was not on the table.

13        Petitioner's claim is without merit and must be denied.

14  *Refusal to Allow Petitioner to Testify*

15        Petitioner next alleges that Mr. Reyes was ineffective for refusing to allow him to testify

16  in his behalf "to present a third party culpability defense."  Petition, at 10.  In his declaration, he

17  states that he expressed a "willingness" to raise a third party defense and indicates that he was the

18  only one that could have presented the jury with a reasonable explanation of how he came into

19  possession of the vehicle.  Declaration of Petitioner, attached to Petition, ¶ 19.  He believes that

20  had testified, the carjacking charge would not have been proven beyond a reasonable doubt.

21        "An accused's right to testify is a constitutional right of fundamental dimension."  United

22  States v. Joelson, 7 F.3d 174, 177 (9th Cir.1993).  When reviewing ineffective assistance of

23  counsel claims that question the attorney's trial strategy, it is important to "note that a

24  defendant's Sixth Amendment rights are his alone, and that trial counsel, while held to a standard

25  of 'reasonable effectiveness,' is still only an assistant to the defendant and not the master of the

26  defense."  Pinholster v. Ayers, 525 F.3d 742 (9th Cir. 2008) (citing Mulligan v. Kemp, 771 F.2d

27

28  [3] Mr. Reyes did not substitute in as retained counsel until April 1, 2004.

1   1436, 1441 (11th Cir.1985).  However, a defendant is "presumed to assent to his attorney's

2   tactical decision not to have him testify."  Joelson, 7 F.3d at 177.  A defendant who wants to

3   reject his attorney's advice and take the stand may do so "by insisting on testifying, speaking to

4   the court, or discharging his lawyer."  Id.

5          The Tulare County Superior Court explained that Petitioner requested, and was granted, a

6   bifurcated trial specifically for the purpose of keeping his prior convictions from the jury, and

7   that his claim "flies in the face" of his own stated request at trial.  Lodged Doc. No. 6, at 3.

8          This determination was not contrary to, or an unreasonable application of, clearly

9   established Supreme Court precedent.  The record before the Court does not overcome the

10  presumption that Petitioner agreed with Mr. Reyes' decision not to call him as a witness.

11  Petitioner did not insist on testifying during trial, nor is there any indication that he objected to

12  Mr. Reyes' failure to call him.  Indeed, Petitioner's argument to this Court simply states that he

13  expressed a "willingness" to testify.  Declaration of Petitioner, attached to Petition, ¶ 19.

14         The Court also notes the absence of any evidence to support Petitioner's contention that a

15  third party committed the carjacking.  In presenting a claim of ineffective assistance based on

16  counsel's failure to call witnesses, Petitioner must identify the witness, U.S. v. Murray, 751 F.2d

17  1528, 1535 (9th Cir. 1985), show that the witness was willing to testify, U.S. v. Harden, 846 F.2d

18  1229, 1231-32 (9th Cir. 1988), and show that the witness's testimony would have been sufficient

19  to create a reasonable doubt as to guilt.  Tinsley v. Borg, 895 F.2d 520, 532 (9th Cir. 1990); see

20  also United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1989) (holding that where defendant

21  did not indicate what witness would have testified to and how such testimony would have

22  changed the outcome of the trial, there can be no ineffective assistance of counsel).

23         Given the evidence, it is not surprising that Petitioner does not present evidence in

24  support of his claim.  As the Tulare County Superior Court explained, Petitioner was identified

25  by the victim, and he was found in possession of the stolen vehicle and the victim's wallet and

26  other items.  Lodged Doc. No. 6, at 2.

27         Finally, had Petitioner testified, he would have subjected himself to cross-examination

28  regarding his apprehension, i.e., why he led officers on a high-speed chase.  He also would have

likely been impeached with his priors, which included felony convictions in 2001 for vehicle theft, burglary and forgery, and a conviction in 1997 of receiving stolen property.

Petitioner is hard pressed to challenge Mr. Reyes' tactical decision.  His claim is without merit and must be denied.

*Interviews with Petitioner*

Petitioner further argues that counsel interviewed him on only two occasions prior to trial, for less than 15 minutes each.  He states that the sole purpose of these interviews was to persuade him to plead guilty to the charged offenses, except carjacking.

"Adequate consultation between attorney and client is an essential element of competent representation of a criminal defendant." Turner v. Duncan, 158 F.3d 449, 457 (9th Cir.1999). However, there is no minimum number of meetings between counsel and client prior to trial necessary to prepare an attorney to provide effective assistance of counsel.  See United States v. Olson, 846 F.2d 1103, 1108 (7th Cir.1988).

According to Petitioner, Mr. Reyes met with him on two occasions, for less than 15 minutes each, and spent this time persuading him to plead guilty to all of the charges except for carjacking.  As Mr. Reyes made a tactical decision not to call Petitioner as a witness, he did not need to review Petitioner's testimony or prepare him for cross-examination.  He is therefore unable to overcome the strong presumption of reasonableness.  Additionally, Petitioner fails to explain how additional meetings would have been helpful and therefore cannot demonstrate a reasonable probability of a different outcome.  Hill, 400 F.3d at 325.

Petitioner's claim is without merit and must be denied.

*Failure to Interview Witnesses*

Without much elaboration, Petitioner alleges that Mr. Reyes was ineffective for failing to interview potential and actual defense witnesses as well as prosecution witnesses.

Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691.  This includes a duty to investigate the defendant's "most important defense," Sanders, 21 F.3d at 1457, and a duty adequately to investigate and introduce into evidence  records that demonstrate

1  factual innocence, or that raise sufficient doubt on that question to undermine confidence in the

2  verdict.  Hart v. Gomez, 174 F.3d 1067, 1070 (9th Cir.1999).  However, "the duty to investigate

3  and prepare a defense is not limitless: it does not necessarily require that every conceivable

4  witness be  interviewed."  Hendricks v. Calderon, 70 F.3d 1032, 1040 (9th Cir.1995).  "A claim

5  of failure to interview a witness. . . cannot establish ineffective assistance when the person's

6  account is otherwise fairly known to defense counsel."  Eggleston v. United States, 798 F.2d 374,

7  376 (9th  Cir.1986) (citations and quotations omitted).  When the record clearly shows that the

8  lawyer was well-informed, and the defendant fails to state what additional information would be

9  gained by the discovery she or he now claims was necessary, an ineffective assistance claim fails.

10  Id.  Furthermore, "ineffective assistance claims based on a duty to investigate must be considered

11  in light of the strength of the government's case."  Id.

12        Petitioner's claim fails because he does not identify any potential witnesses that counsel

13  should have interviewed.  He also fails to indicate their likely testimony.  His assertion is

14  therefore nothing but speculation and must be denied.

15        *Miranda* Waiver Materials

16        In his final claim of ineffective assistance of trial counsel, Petitioner argues that Mr.

17  Reyes failed to investigate and obtain "training bulletins, manuals, videotapes, seminar materials,

18  case summaries and other documents" from the various law enforcement entities involved in his

19  apprehension.  He believes that this information was necessary to support his argument that his

20  Fifth Amendment rights were violated by Officer Alvarez.

21        As will be discussed in more detail below, since Petitioner's statements to Officer

22  Alvarez were not introduced at trial, there was no Fifth Amendment violation.  Therefore,

23  counsel cannot be ineffective on this basis.  Petitioner's claim is without merit and must be

24  denied.

25  D.    Ineffective Assistance of Appellate Counsel

26        Petitioner next argues that his appellate counsel was ineffective for failing to investigate

27  and raise issues related to his alleged Miranda violations.

28        Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the

1  Fourteenth Amendment.  Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).  Claims of ineffective

2  assistance of appellate counsel are reviewed according to Strickland's two-pronged test.  See, e.g.

3  Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846,

4  847 (9th Cir.1986).  A defendant must therefore show that counsel's advice fell below an

5  objective standard of reasonableness and that there is a reasonable probability that, but for

6  counsel's unprofessional errors, defendant would have prevailed on appeal.  Miller, 882 F.2d at

7  1434, n.9.

8      However, appellate counsel does not have a constitutional duty to raise every

9  nonfrivolous issue requested by defendant.  Jones v. Barnes, 463 U.S. 745, 751-54 (1983);

10 Miller, 882 F.2d at 1434, n. 10.  The weeding out of weaker issues is widely recognized as one of

11 the hallmarks of effective appellate advocacy.  Id. at 1434 (footnote and citations omitted).  As a

12 result, appellate counsel will frequently remain above an objective standard of competence and

13 have caused her client no prejudice for the same reason--because she declined to raise a weak

14 issue.  Id.

15     Petitioner's claim that appellate counsel was ineffective for failing to raise the Miranda

16 issues fails because, as set forth below, the statements allegedly obtained in violation of

17 Petitioner's Miranda rights were not introduced at trial.

18     Insofar as Petitioner suggests that appellate counsel was ineffective for failing to present

19 the arguments in the instant habeas petition on appeal, his argument also fails.  As is discussed

20 throughout this opinion, Petitioner's arguments before this Court are meritless and appellate

21 counsel cannot be found ineffective for failing to raise them.

22     The state courts' determination of this issue was not contrary to, or an unreasonable

23 application of, clearly established Supreme Court precedent.  His claim is without merit and must

24 be denied.

25 E.    Fifth Amendment Rights

26      In his next allegation of error, Petitioner contends that Officer Alvarez violated his Fifth

27 Amendment right against self-incrimination by (1) using deceptive and coercive tactics to obtain

28 statements; and (2) questioning Petitioner without obtaining a Miranda waiver, and continuing to

1    question him even after he invoked his right to counsel.

2        The Fifth Amendment states that "[n]o person … shall be compelled in any criminal case

3    to be a witness against himself. . ."  In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme

4    Court held that certain warnings must be given before a suspect's statement made during

5    custodial interrogation can be admitted into evidence during trial.  The remedy for a violation of

6    Miranda rights is the suppression, at the subsequent trial, of the incriminating statements the

7    defendant made during questioning.  Miranda, 384 U.S. at 479.  The Ninth Circuit has

8    determined that habeas relief should be granted only if the admission of statements in violation of

9    Miranda "had substantial and injurious effect or influence in determining the jury's verdict."

10   Jackson v. Giurbino, 364 F.3d 1002, 1010 (9th Cir. 2004) (citations omitted).

11        Thus, there can be no Miranda violation where, as here, the statements at issue were not

12   introduced at trial.  Officer Alvarez testified about the interrogation at the preliminary hearing

13   and Petitioner's counsel moved to suppress the statements.  The prosecutor stated that she did not

14   intend to introduce any of the statements at trial, and therefore the court did not hold a hearing on

15   the motion.  RT 19-21.  During trial, Officer Alvarez testified about his investigation but did not

16   discuss any of the statements Petitioner now challenges.  RT 195-227.

17        To the extent that Petitioner asserts a violation of due process based on Officer Alvarez's

18   allegedly coercive tactics, such a claim is similarly precluded where the statements were not

19   introduced at trial.

20        The state courts' determination of this issue was not contrary to, or an unreasonable

21   application of, clearly established Supreme Court precedent.

22   F.    Identification at Preliminary Hearing

23        Finally, Plaintiff contends that his due process rights were violated by an "impermissible

24   show-up procedure used by the prosecution."  Petition, at 7.  Specifically, he argues that the

25   victim was improperly allowed to identify him while he was in court, prior to his preliminary

26   hearing and without his attorney, as he sat in the jury box with two other pretrial detainees.

27        It is clear that a defendant has a due process right not to be identified prior to trial in a

28   manner that is "unnecessarily suggestive and conducive to irreparable mistaken identification."

13

1   Stovall v. Denno, 388 U.S. 293, 301-02 (1967), *overruled on other grounds by* Griffith v.

2   Kentucky, 479 U.S. 314, 326 (1987).  The Supreme Court has adopted a "totality of the

3   circumstances" test to be used in the analysis of identification testimony.  Manson v. Brathwaite,

4   432 U.S. 98, 114 (1977).  Identification testimony, even if flawed by improper police behavior,

5   remains admissible if it appears reliable.  Id.  Thus, an unnecessarily suggestive identification is

6   not subject to a "per se" exclusion.  Id.

7       The identification that Petitioner complains of here was not in the form of a police lineup

8   or showup, but rather was the result of an unplanned encounter between the victim and Petitioner

9   while Petitioner was awaiting the start of his preliminary hearing.  The Supreme Court has not

10   specifically discussed whether identification through an accidental encounter is entitled to the

11   same protections.  However, some circuits, including the Ninth Circuit in a pre-AEDPA case,

12   apply the same test regardless of the circumstances of the identification.  "Because it 'is the

13   likelihood of misidentification that violates a defendant's right to due process . . .only the effects

14   of, rather than the causes for, pre-identification encounters should be determinative of whether

15   the confrontations were unduly suggestive."  Thigpen v. Cory, 804 F.2d 893, 895 (6th Cir. 1986)

16   (adopting holding in Green v. Loggins, 614 F.2d 219, 223 (9th Cir. 1980)).

17       Here, Mr. Clemons was unable to positively identify a suspect during the two

18   photo lineups utilized by the police.  The first lineup included a picture of Petitioner's brother,

19   which Mr. Clemons identified as the one that most resembled the suspect.  RT 200-202.

20       According to Officer Alvarez's testimony, on January 30, 2004, he was in the

21   victim-witness room with Mr. Clemons, awaiting a call for the preliminary hearing.  When he

22   was told that they would be waiting for a while, he suggested that they go to the courtroom to

23   watch other preliminary hearings, to "pass the time."  RT 211.  As soon as they walked into the

24   courtroom, Officer Alvarez saw Petitioner sitting with two other inmates in the jury box.  RT

25   211.  "Immediately upon sitting down," Officer Alvarez noticed that Mr. Clemons, who had been

26   calm, became upset and said that he saw the individual who carjacked him.  RT 212.

27       Mr. Clemons identified Petitioner during the preliminary hearing.  CT 39.  At trial, he

28   again identified Petitioner.  RT 126.  He also described the circumstances of the pretrial

1  encounter with Petitioner and testified that he was "100 percent" sure of his identification.  RT

2  133-137.

3        Prior to trial, Petitioner's counsel moved to suppress the pretrial identification.  RT 72.

4  The trial court denied the motion, explaining that the encounter was not a designed lineup, but

5  rather an "inevitable encounter."  The victim was subpoenaed and there was an inevitable time of

6  confrontation.  RT 86.  Given the general nature of the circumstances and the relative immediacy

7  of the identification, the court concluded that it was not unreliable.  RT 87.

8        Petitioner contends that the other detainees that he was seated with were "unquestionably

9  substantially different."  Petition, at 7.  To the extent that Petitioner believes that this makes the

10  identification unreliable, he is incorrect.  As the trial court found, the circumstances of the

11  encounter were not unduly suggestive.  Although Petitioner was in prison clothing, neither the

12  victim nor Officer Alvarez expected to see Petitioner when they arrived early at the courtroom.

13  Nor does it appear that the other detainees were substantially different in appearance.  Officer

14  Alvarez testified that they were all young, Hispanic men with similar hairstyles.  RT 80-84.

15        Petitioner alleges in his declaration that he saw the "deputy district attorney" point him

16  out to the victim.  Declaration, ¶ 11.  However, there is no evidence that the prosecutor was in

17  the courtroom at the time of the encounter.

18        In any event, the pretrial encounter would not have affected the reliability of Mr.

19  Clemons' identification during trial.  The factors to be considered when assessing whether an

20  identification was reliable are: (1) the informer's opportunity to view the criminal at the time of

21  the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description

22  of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5)

23  the length of time between the crime and confrontation.  Neil v. Biggers, 409 U.S. 188,199-200,

24  (1972).

25        Here, Mr. Clemons testified that the attack happened at 12:30 p.m., when the assailant

26  approached his car and put a gun to his head.  RT 119.  He got a good look at the gun and was

27  able to provide a description of the suspect- a short, Hispanic male, wearing a dark beanie, a "real

28  puffy sports type jacket, like a football team or something life that type jacket," and baggie pants.

RT 121.  He estimated his age to be 25 to 35.  RT 121.  Based on this testimony and the

circumstances of the crime, Mr. Clemons likely had a good opportunity to view Petitioner, who's

face was unobstructed in broad daylight.  His degree of attention would likely have been high,

given that the suspect was holding a gun to his head.  He also provided a detailed description of

the suspect, and picked Petitioner's brother out of the first lineup as the person most resembling

the suspect.  Mr. Clemons testified that he was 100 percent sure of his identification of Petitioner

at the pretrial encounter, which occurred shortly after the crime.  Therefore, under these

circumstances, the identification would not likely have been suppressed as unreliable.

        The state courts' determination of this issue was not contrary to, or an unreasonable

application of, clearly established Supreme Court precedent.  Petitioner's claim is without merit

and must be denied.

## ORDER

        Accordingly, IT IS HEREBY ORDERED that:

        1.      The petition for writ of habeas corpus is DENIED; and

        2.      The Clerk of the Court is DIRECTED to enter judgment in favor of Respondent.

                This terminates this action in its entirety.


        IT IS SO ORDERED.

        **Dated:    August 25, 2008**              **/s/ Dennis L. Beck**
                                          UNITED STATES MAGISTRATE JUDGE